**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
Case No. 3:25-CV-153

| | |
|---|---|
| HAYWARD INDUSTRIES, INC, | |
| Plaintiff, | |
| v. | DEMAND FOR JURY TRIAL |
| GLEIDSON DA SILVA AZEVEDO *a/k/a* RICARDO AZEVEDO GOMES DOS SANTOS, GSA POOL SERVICES, TEXAS FRISCO SUPPLY LLC, AMERICA POOL SUPPLY, ZION POOL SUPPLY, R&S POOL SERVICES LLC, and JOHN DOE #1 | |
| Defendants. | |

## HAYWARD INDUSTRIES, INC.'S COMPLAINT

Plaintiff Hayward Industries, Inc. ("Hayward" or "Plaintiff") is suing Defendants Gleidson da Silva Azevedo *a/k/a* Ricardo Azevedo Gomes Dos Santos ("Azevedo"), GSA Pool Services, Texas Frisco Supply LLC, America Pool Supply, Zion Pool Supply, R&S Pool Services, LLC, and John Doe # 1 (collectively, "Defendants") for (1) trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114 and 15 U.S.C. § 1125; (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (3) unfair competition and false designation of origin in violation of the Lanham Act, 15 U.S.C. § 1125(a); (4) unfair competition by passing off in violation of the Lanham Act, 15 U.S.C. § 1125(a); (5) common law trademark infringement and unfair competition under North Carolina law; (6) unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75-1.1, and (7) tortious interference with contract and business relations. These claims arise out of Defendants' infringement of Hayward's trademarks in connection with Defendants' unlawful and unauthorized advertisement and sale of Hayward-brand products on the internet,

1

including the sale of non-genuine, defective, damaged, and/or poor-quality products bearing the Hayward trademarks.

## PARTIES

1.      Plaintiff Hayward Industries, Inc, is a New Jersey corporation having its principal place of business located in Charlotte, North Carolina.

2.      Defendant Gleidson da Silva Azevedo *a/k/a* Ricardo Azevedo Gomes Dos Santos is a natural person who, on information and belief, resides in Frisco, Texas at either 3198 Parkwood Blvd., Apt. 13042, Frisco, TX 75034, 3198 Parkwood Blvd., Apt. 21063, Frisco, TX 75034, 8100 Gaylord Pkwy., Apt. 1124, Frisco, TX 75034, and/or 13135 Cleburne Drive, Frisco, TX 75035. Defendant Azevedo owns, operates, or assists in the operation of an Amazon storefront called GSA Pool Services.

3.      Defendant GSA Pool Services (GSA) is, on information and belief, a *d/b/a* or alias of Mr. Azevedo or is Mr. Azevedo's alter ego. In particular, GSA is the Amazon "storefront" through which Mr. Azevedo advertises and sells on Amazon.com the trademark infringing products that are the subject of this complaint. (An Amazon "storefront" is a dedicated webpage on Amazon through which a seller can advertise and sell its products. Storefronts, whether on Amazon or on other retail platforms (e.g., eBay, Etsy, etc.) are sometimes, as the name suggests, *fronts* that disreputable sellers use to hide their true identities. *See, e.g.,* Department of Homeland Security, *Combating Trafficking in Counterfeit and Pirated Goods* (Jan. 24, 2020), available at https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-report_01.pdf, at 38-39 (last accessed February 25, 2025) ("[B]uyers have been surprised to discover upon completion of an online sales transaction, that the order will be fulfilled by **an unknown third-party seller**" and recommending that "[p]latforms should implement additional

measures to inform consumers, prior to the completion of a transaction, of **the identify of storefront owners**").  GSA is located at 3198 Parkwood Blvd., Apt. 13042, Frisco, TX 75034, 3198 Parkwood Blvd., Apt. 21063, Frisco, TX 75034,  8100 Gaylord Pkwy., Apt. 1124, Frisco, TX 75034, and/or 13135 Cleburne Drive, Frisco, TX 75035.

4.      Mr. Azevedo, through GSA Pool Services, does business throughout the United States, including North Carolina, through the GSA Amazon storefront.  Defendant Azevedo directs, controls, ratifies, participates in, and is the moving force behind the unlawful activity alleged herein.  The Merchant ID number for the GSA Amazon storefront is A2B5L3G0F5UVO, and the Amazon storefront can be accessed at https://www.amazon.com/s?me=A2B5L3G0F5UVO and https://www.amazon.com/sp?ie=UTF8&seller=A2B5L3G0F5UVO&asin=B07G8P8Y7C&ref_=dp_merchant_link&isAmazonFulfilled=1.

5.      Defendant Texas Frisco Supply LLC is, on information and belief, a *d/b/a* or alias of Mr. Azevedo and/or GSA Pool Services and America Pool Supply, or is Mr. Azevedo's alter ego.  Mr. Azevedo is Texas Frisco Supply's registered agent and its only Managing Member.  On information and belief, Mr. Azevedo uses Texas Frisco Supply to operate and/or assist in the operation of the GSA Amazon storefront. Texas Frisco Supply is located at 3198 Parkwood Blvd Apt 13042 Frisco, TX 75034 and/or 13135 Cleburne Drive, Frisco, TX 75035

6.      Defendant America Pool Supply is, on information and belief, a *d/b/a* or alias of Mr. Azevedo or is Mr. Azevedo's alter ego.  America Pool Supply is an Amazon "Storefront" that Texas Frisco Supply owns and/or controls via its only Manager Member, Mr. Azevedo,  which upon information and belief, Mr. Azevedo advertises and sells on Amazon.com the trademark infringing products that are the subject of this complaint.

3

7.      Mr. Azevedo through America Pool Supply does business in the United States, including North Carolina, through the America Pool Supply Amazon storefront.  Defendant Azevedo directs, controls, ratifies, participates in, and is the moving force behind the unlawful activity alleged herein.  The Merchant ID number for the America Pool Supply Amazon storefront is AM3P58WBWG1RO, and the Amazon storefront can be accessed at

https://www.amazon.com/sp?ie=UTF8&seller=AM3P58WBWG1RO&asin=B07G8P8Y7C&ref_=dp_merchant_link.

8.      Defendant G&S Pool Services LLC is, on information and belief, a *d/b/a* or alias of Mr. Azevedo, or is Mr. Azevedo's alter ego. Mr. Azevedo is G&S Pool Services LLC's registered agent and its only Managing Member.  On information and belief, Mr. Azevedo uses G&S Pool Services LLC to operate and/or assist in the operation of the America Pool Supply and GSA Amazon storefronts. G&S Pool Services is located at 3198 Parkwood Blvd #21063 Frisco, TX 75034.

9.      Defendant Zion Pool Supply is, on information and belief, a *d/b/a* or alias of Mr. Azevedo and/or GSA Pool Services, or is Mr. Azevedo's alter ego.  On information and belief, Mr. Azevedo uses Zion Pool Supply to operate and/or assist in the operation of the GSA Amazon or America Pool Supply storefronts.

10.     John Doe # 1 is, on information and belief, the true corporate entity behind the GSA storefront.  The true names involvement, and capacities, whether individual, corporate, associated or otherwise of John Doe # 1 are unknown to Hayward.  Therefore, Hayward sues John Doe # 1 by a fictitious name.  Hayward is informed and believes, and on that basis alleges, that John Doe # 1 is equally responsible for the events and occurrences alleged in this complaint or is otherwise interested in the outcome of the dispute.  When the true name, involvement, and capacities of this party are ascertained, Hayward will seek leave to amend this complaint accordingly.

11.     It appears that all of the Defendants are aliases, d/b/a's, or alter egos of Azevedo. Further, all of the Defendants are owned or controlled by the same person, Azevedo, and work in concert with each other to infringe Hayward's intellectual property rights. As such, all of the Defendants are jointly and severally liable for the wrongful conduct. as further alleged below.

## JURISDICTION

12.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 (federal question) and 1338 (trademark and unfair competition cases), and 28 U.S.C. § 1367.  Plaintiff's federal claims are predicated on 15 U.S.C. § 1114 and 15 U.S.C. § 1125(a) and (c), and its claims arising under the laws of the state of North Carolina are substantially related such that they form part of the same case or controversy under Article III of the United States Constitution.

13.     This Court has personal jurisdiction over Defendants because they have purposefully availed themselves of the privilege of doing business in North Carolina and have engaged in significant contacts with North Carolina, including significant and regular sales, shipments, distribution and/or offers thereof for infringing products bearing Hayward's trademarks in North Carolina and to North Carolina residents.  Defendants have engaged in these tortious activities with the knowledge that Hayward is located in North Carolina and will be harmed by Defendants' actions in North Carolina.

14.     Defendants have created an interactive online storefront on Amazon called GSA POOL SERVICES and AMERICA POOL SUPPLY.  Through this interactive online storefront, Defendants actively advertise, market, sell, ship, and distribute infringing products bearing Hayward's trademarks in North Carolina and to North Carolina residents through the regular course of business.  Defendants do not place any geographic restrictions on who can buy their

5

products from these on-line retail sites, and, as such, these products and the ads for them are made available to residents of North Carolina as well as to residents of other states. In other words, via Amazon, Defendants advertise and sell the trademark infringing products to consumers in North Carolina. Defendants continue to engage in these actions despite being put on notice of their illegal conduct and the pendency of this action.

15.     Hayward's claims against Defendants arise out of the tortious actions alleged below.

16.     Defendants' activities in North Carolina have been significant, and they have regularly advertised and sold products improperly bearing Hayward's trademarks to North Carolina and continue to do so.

17.     Further, despite having been put on notice of their infringing activities, Defendants continue to engage in their tortious activities and sell their infringing products into North Carolina. Defendants intended their sales, distribution, shipping, marketing, and advertising of infringing goods to reach North Carolina and affect Hayward's business operations in North Carolina, including but not limited to, causing confusion, mistake, or deceit among Hayward's customers.

18.     Venue is proper in this District under, without limitation, 28 U.S.C. § 1391(b)(2)-(3), because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL BACKGROUND

**A.      Hayward and Its Trademarks**

19.      For over 80 years, Hayward has developed, manufactured, marketed, and sold cutting edge, environmentally responsible, and technologically advanced pool and spa equipment ("Hayward Products") for residential and commercial in-ground and above ground pools and spas worldwide.  Hayward sells Hayward Products in the United States through Amazon.com and through a network of authorized on-line and brick and mortar resellers, distributors, and retailers (collectively "Authorized Sellers").

20.      Hayward devotes a significant amount of time, energy, and resources toward protecting the value of the Hayward brand, products, name, and reputation.  By distributing Hayward Products exclusively through Authorized Sellers, Hayward is able to ensure the safety and satisfaction of consumers and maintain the integrity and reputation of the Hayward brand. Safety, quality, customer support, and innovation are fundamental to a customer's decision to purchase a product in the highly competitive pool and spa equipment industry.

21.      To promote and protect the Hayward brand, Hayward has registered several trademarks with the United States Patent and Trademark Office, including, but not limited to:

- HAYWARD® (U.S. Trademark Reg. Nos. 3,969,301 and 1,058,211);

- TOTALLY HAYWARD® (U.S. Trademark Reg. 5,908,306);

- EXPERT LINE® (U.S. Trademark Reg. No. 6,113,689);

- H® (U.S. Trademark Reg. Nos. 4,016,737 and 1,132,980);

- MAXFLO® (U.S. Trademark Reg. No. 6,048,151);

- TRISTAR® (U.S. Trademark Reg. No. 3,190,201);

- POWER-FLO® (U.S. Trademark Reg. No. 2,075,752);

- AQUA RITE® (U.S. Trademark Reg. Nos. 3,704,835);

- GOLDLINE® (U.S. Trademark Reg. No. 5,726,797);

- PRO LOGIC® (U.S. Trademark Reg. No. 3,538,131);

- OMNILOGIC® (U.S. Trademark Reg. Nos. 4,672,840 and 7,426,540);

- COLORLOGIC® (U.S. Trademark Reg. Nos. 2,865,720);

- TURBO CELL® (U.S. Trademark Reg. No. 3,156,434);

- T-CELL-3® (U.S. Trademark Reg. No. 6,085,072);

- T-CELL-9® (U.S. Trademark Reg. No. 6,085,074);

- T-CELL-15® (U.S. Trademark Reg. No. 6,085,079);

- TCELL925® (U.S. Trademark Reg. No. 6,085,081);

- TCELL940® (U.S. Trademark Reg. No. 6,085,083); and

- ECOSTAR® (U.S. Trademark Reg. No. 3,935,362) (collectively, the "Hayward Trademarks").

22.     The registrations for the Hayward Trademarks are valid and in full force and effect.

23.     Hayward first registered the HAYWARD® mark in 1977 and has actively used the mark since at least as early as 1956.

24.     Hayward actively uses all of the Hayward Trademarks in commerce throughout the United States to advertise, market, offer for sale, and sell the Hayward Products.

25.     Consumers recognize the Hayward Trademarks as being associated with innovative, safe, and high-quality pool and spa equipment.

26.     Because of the innovation, safety, and quality of Hayward products, consumers trust the Hayward brand and associate the Hayward name with innovative, safe, and high-quality pool and spa equipment.

27.     For all of these reasons, the Hayward Trademarks are widely recognized by the general consuming public of the United States and Hayward is recognized as the source of products bearing the Hayward Trademarks.

28.     Due to the superior quality and exclusive distribution of Hayward Products, and because Hayward is uniquely recognized as the source of these high quality products, the Hayward Trademarks have considerable value.

**B.      Online Marketplaces and the Challenges They Present to the Quality of Hayward Products**

29.     E-commerce retail sales have exploded over the past decade.  From 2009 to the end of 2019, the percentage of total retail sales in the United States that were completed through e-commerce channels rose from 3.8% to 11.4%.  From the end of 2019 to the second quarter of 2024, the percentage of total retail sales in the United States that were completed through e-commerce channels continued to rise from 11.4% to 16%.  *E-Commerce Retail Sales as a Percent of Total Sales*, FEDERAL RESERVE BANK OF ST. LOUIS (last accessed February 25, 2025), https://fred.stlouisfed.org/series/ECOMPCTSA.

30.     In 2023, consumers spent $1.119 trillion  on e-commerce sales, a 7.6% increase from 2022.  The massive growth in e-commerce is being driven largely by sales on online marketplaces.  *See* Abbas Haleem, *U.S. ecommerce sales reached $1.119 trillion 2023*, DIGITAL COMMERCE 360 (last accessed February 25, 2025), https://www.digitalcommerce360.com/article/us-ecommerce-sales/.

31.     While online marketplaces (*e.g.*, Amazon.com, eBay, Alibaba, etc.) have created a great deal of opportunity, they also greatly challenge a brand owner's ability to control the quality and safety of its products.

32.     Unlike when purchasing products at a brick-and-mortar store, consumers who purchase products through online marketplaces cannot touch, inspect, or interact with products before purchasing them.  Instead, consumers must trust that the product they select over the internet will be authentic and of the quality they expect and typically receive from the manufacturer.

33.     Online marketplaces have an exceedingly low barrier to entry, do not confirm whether  sellers to be authorized sellers of the products they sell, and do not require sellers to disclose to consumers whether they are an authorized or unauthorized seller.  As a result, any person or entity who is able to obtain a brand owner's products through unauthorized channels can sell the products on online marketplaces while concealing that they are unauthorized and are outside of the brand owner's quality controls.

34.     Online marketplaces are overrun by unauthorized sellers who have no relationship with (or obligations to) brand owners who exercise quality controls over their products sold by authorized sellers.  It is unfortunately common for unauthorized sellers to sell diverted products on online marketplaces that are of lesser quality than products sold through brand owners' authorized channels.  *See* Scott Cohn, *Greed Report: Your quest for savings could land you in the "gray market,"* CNBC, Sept. 8, 2016, https://www.cnbc.com/2016/09/08/greed-report-your-quest-for-savings-could-land-you-in-the-gray-market.html (last accessed February 25, 2025); Alexandra Berzon et al., *Amazon Has Ceded Control of Its Site. The Result: Thousands of Banned, Unsafe or Mislabeled Products*, THE WALL STREET JOURNAL, Aug. 23, 2019, https://www.wsj.com/articles/amazon-has-ceded-control-of-its-site-the-result-thousands-of-banned-unsafe-or-mislabeled-products-11566564990 (last accessed February 25, 2025).  It is also common for unauthorized sellers to sell products that are previously used—including products retrieved from dumpsters—as "new" on online marketplaces.   *See* Khadeeja Safdar et al., *You

10

*Might Be Buying Trash on Amazon—Literally*, THE WALL STREET JOURNAL, Dec. 18, 2019,

https://www.wsj.com/articles/you-might-be-buying-trash-on-amazonliterally-11576599910 (last

accessed February 25, 2025).

35.     Third-party sellers on Amazon may also sell counterfeit items, or allow counterfeit

items to enter the stream of commerce through poor controls, sourcing, and fulfillment practices.

36.     For example, the Department of Homeland Security published a report noting that

online marketplaces can facilitate the sale of counterfeit goods and that "American consumers

shopping on e-commerce platforms and online third-party marketplaces now face a significant risk

of purchasing counterfeit or pirated goods."  Department of Homeland Security, *Combating*

*Trafficking in Counterfeit and Pirated Goods* (Jan. 24, 2020), available at

https://www.dhs.gov/sites/default/files/publications/20_0124_plcy_counterfeit-pirated-goods-

report_01.pdf, at 7 (last accessed February 25, 2025).  The report stated that consumers on online

marketplaces cannot rely on traditional "red flag" indicators of counterfeits and "have been

surprised to discover that upon completion of an online sales transaction, that the order will be

fulfilled by an unknown third-party seller." *Id*. at 14-15, 38.  To mitigate these problems, the

report recommended "[s]ignificantly enhanced vetting of third-party sellers." *Id.* at 35.

37.     The business press has also reported extensively on how there is an "epidemic" of

counterfeit products being sold on the online marketplaces that diverters are exploiting because

they know consumers trust marketplaces and think the products they are buying through the

marketplaces are genuine. *See* Jay Greene, *How Amazon's quest for more, cheaper products has*

*resulted in a flea markets of fakes*, THE WASHINGTON POST, Nov. 14, 2019,

https://www.washingtonpost.com/technology/2019/11/14/how-amazons-quest-more-cheaper-

products-has-resulted-flea-market-fakes/?arc404=true (last accessed February 25, 2025).

38.     The problem of sales of counterfeit and other poor-quality products on online marketplaces has become so serious that, in November 2019, the United States Senate Finance Committee issued a bipartisan report on the issue. The Committee found that the rise of e-commerce has fundamentally changed how consumers shop for products and that, as e-commerce has grown, counterfeit goods and products that "violate a right holder's trademark or copyright" are being sold at an accelerating rate on e-commerce platforms. The Committee concluded that these sales are a "significant threat" to rights holders' brands and to consumers, and that under current law it is up to rights holders to protect their intellectual property rights online. *See* Senate Finance Committee, *The Fight Against Fakes: How Statutory and Regulatory Barriers Prevent the Sharing of Information on Counterfeits*, Nov. 7, 2019, https://www.finance.senate.gov/imo/media/doc/The%20Fight%20Against%20Fakes%20%20(2019-11-07).pdf (last accessed February 25, 2025).

39.     In its 2023 and 2024 annual reports to its shareholders, Amazon also admitted that third party sellers on its marketplace are selling products that are "counterfeit," "pirated," "stolen," or otherwise "materially different" from the product that was described to consumers. *See* Amazon.com, Inc., Annual Report (Form 10-K), at 8 (Feb. 3, 2023), *available at* https://ir.aboutamazon.com/sec-filings/sec-filings-details/default.aspx?FilingId=16361618 (last accessed February 25, 2025). Amazon.com, Inc., Annual Report (Form 10-K), at 8 (Feb. 2, 2024), *available at* https://ir.aboutamazon.com/sec-filings/sec-filings-details/default.aspx?FilingId=17229449 (last accessed February 25, 2025). Amazon conceded that these actions are "violating the proprietary rights of others," and warned its investors that it could be liable for "unlawful activities" of Amazon third-party sellers.

40.     Because brand owners have no relationship with or control over unauthorized sellers, brand owners have no ability to exercise their quality controls over products sold by unauthorized sellers or to ensure the products are safe and authentic.  A manufacturer's inability to exercise control over the quality of its products presents serious risks to the safety of consumers.

41.     The structure, construction, and user interface of online marketplaces also pose threats to a manufacturer's ability to maintain its goodwill, reputation, and brand integrity.

42.     When purchasing products on an online marketplace, customers are not informed whether a seller of a product is authorized by the manufacturer.  Additionally, the interface design of many online marketplaces causes consumers to falsely believe that they are always purchasing from the manufacturer or, at minimum, from an authorized seller that is selling under the manufacturer's oversight and with the manufacturer's approval.  Consumers who purchase on Amazon are particularly likely to experience this confusion because, on Amazon, all sellers of a product are listed under a single product listing even though many products are sold on Amazon by unauthorized sellers that have no relationship with the brand owner.

43.     This consumer confusion is made worse by Amazon.com directing consumers to the brand's storefront on product listings that are not authorized by the brand.  For example, below is a screenshot from a product listing for a Hayward pool filter sold by Defendants, who are not Authorized Sellers of Hayward Products.  The listing directs consumers to "visit the Hayward store," just below the product's headline (see highlighting), even though this product is offered for sale by an unauthorized reseller, namely, Defendants.



https://www.amazon.com/Hayward-W3S180T-ProSeries-18-Inch-Top-Mount/dp/B07SS48CCX/ref=sr_1_1?dib=eyJ2IjoiMSJ9.ZDxs4QhoQG7Z_K0YHWwUzdibrMc3ampWnXktmu_2lnlx5UcWTYEnZ2BZCgXwZAcjX6ycmEnAuw9f-SfwsnO-L12hkXtUccm9maQgB6ea_8_BtZ-fy2hk9i08PGcFyLWocsC01yqf8f3mJgIrQgiICapku9VXl4Exso_Z89PXlodvZi3wsvtLuyFJBb2R3yrBAg9SzR0Z2ne0-JNjLtvx8-Y1v86HmCE-wtPqvzikchw.eAj6hTv-L7LJZmQ07pr2QcYu2y-_LtEZ0QYtYNET2q4&dib_tag=se&keywords=hayward&m=A2B5L3G0F5UVO&qid=1725029510&s=merchant-items&sr=1-1&th=1 (last accessed February 25, 2025).

44. For all of these reasons, a vast number of consumers purchase products on online marketplaces without recognizing that they purchased from an unauthorized seller that does not (and cannot) follow the manufacturer's quality controls.

45.    When a customer purchases a product on an online marketplace and receives a damaged, defective, or otherwise poor-quality product, the customer is much more likely to associate the problem with the brand/manufacturer rather than the product seller.

46.    Online marketplaces also give disgruntled customers a powerful and convenient forum to air their grievances about problem products—online product reviews.  Any consumer who is dissatisfied with the product received can post a review on the marketplace for all other consumers across the world to see.  These reviews, which are often permanently fixed, will often criticize the brand rather than the marketplace seller that sold the product.

47.    Online product reviews significantly impact a brand's reputation.  Survey results show that 82% of United States adults "sometimes" consult online reviews for information when they consider buying a new product online, and 40% "always" or "almost always" consult such reviews.  Aaron Smith & Monica Anderson, *Online reviews*, PEW RESEARCH CENTER, Dec. 19, 2016, http://www.pewinternet.org/2016/12/19/online-reviews/ (last accessed February 25, 2025).

48.    Consumers place extraordinary trust in these online reviews.  Because consumers so heavily "rely on reviews when they're shopping online," the Federal Trade Commission has begun suing companies who post fake reviews of their products on online marketplaces. Megan Henney, *FTC cracking down on fake Amazon reviews*, FOX BUSINESS, Feb. 28, 2019, https://www.foxbusiness.com/technology/ftc-cracking-down-on-fake-amazon-reviews (quoting a press release from the director of the FTC) (last accessed February 25, 2025).

49.    Recently, the Federal Trade Commission announced a Final Rule banning fake reviews and testimonials, recognizing that "[f]ake reviews not only waste people's time and money, but also pollute the marketplace and divert business away from honest competitors." *Federal Trade Commission Announces Final Rule Banning Fake Reviews and Testimonials,*

FEDERAL TRADE COMMISSION, August 14, 2024, https://www.ftc.gov/news-events/news/press-releases/2024/08/federal-trade-commission-announces-final-rule-banning-fake-reviews-testimonials (last accessed February 25, 2025).

50.     Reviews are especially impactful on online consumers. In a brick-and-mortar store, a consumer can simply select another product from the shelf if the initial product selected appears to be compromised. However, online consumers are left simply having to hope that the product that shows up on their doorstep is of appropriate quality. Therefore, online consumers rely more on brand reputation and reviews.

51.     Because of the reliance consumers place on online reviews, negative online reviews can be the death knell for a manufacturer's online product listings. According to one study, as few as three negative online reviews will deter a majority (67%) of online consumers from purchasing a particular product. Graham Charlton, *How many bad reviews does it take to deter shoppers?*, ECONSULTANCY, March 20, 2012, https://econsultancy.com/ecommerce-consumer-reviews-why-you-need-them-and-how-to-use-them/ (last accessed February 25, 2025).

52.     Negative reviews also hurt a brand's placement in search results on Amazon and other search engines, as Amazon's search algorithm downgrades products it believes consumers are less likely to buy. Thus, poor reviews can create a downward spiral where downgraded search placement leads to reduced sales, which leads to search placement falling further.

**C.     Hayward Products Have Been the Target of Numerous Negative Online Marketplace Reviews From Customers Who Purchased Products from Sellers Who, Like Defendants, Do Not Follow the Quality Controls that Hayward Requires Its Authorized Sellers to Follow**

53.     Consumers who purchase from unauthorized sellers on online marketplaces frequently receive poor quality products and leave negative reviews on the product listing. These negative reviews injure consumer perceptions of the brand's quality and reputation, as well as its

placement in search results, ultimately causing the brand to suffer damage to its goodwill and lost sales.

54.     Hayward Products have been the subject of numerous online marketplace reviews from customers who purchased products from sellers, like Defendants, that failed to implement the quality controls that Hayward requires of its Authorized Sellers. These customers complain of receiving tampered with, poor quality, defective, or knockoff products.

55.     As an example and as recently as February 22, 2025, an Amazon customer complained that he received a defective product and was denied warranty coverage.



https://www.amazon.com/gp/customer-reviews/R1Q71R3YR4XIH9?ie=UTF8&ASIN=B07SS48CCX (accessed February 25, 2025)

56.     For example, on August 23, 2024, an Amazon customer complained that he received a defective product and that he tried to contact Hayward in response: "I have contacted Hayward twice with no response and their local [representative] only responds to kick the can down the road when I complain about no answer.  This is a defective product with no help."



(Last accessed February 25, 2025, https://www.amazon.com/product-reviews/B07SS48CCX/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar.)

57.     Similarly, on June 15, 2022, an Amazon customer complained that they were not shipped the correct product and stated that they would not be "ordering any items or products from" Hayward.  To wit:



(Last accessed February 25, 2025, https://www.amazon.com/product-reviews/B004VTGNGG/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar.)

58.     In June and July of 2023, two different Amazon customers complained that they received knockoffs of Hayward products, as shown below.



(Last accessed February 25, 2025, https://www.amazon.com/product-reviews/B07G8P8Y7C/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar.)

59. Another Amazon customer, on June 25, 2024, complained that the product they received "looked like it has been attempted to be fixed" and that the product did not work, as shown below.



(Last accessed February 25, 2025, https://www.amazon.com/product-reviews/B07SS48CBC/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar.)

60. On May 16, 2023, another Amazon customer complained that the Hayward product they purchased was defective, as shown below.



(Last accessed February 25, 2025, https://www.amazon.com/product-reviews/B07SPM17K6/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar.)

61. Some Amazon customers have complained about the lack of customer support from unauthorized sellers of Hayward products, as shown below.



(Last accessed February 25, 2025, https://www.amazon.com/product-reviews/B07ST5VNN8/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar.)

62.     Hayward tells consumers that "Because Hayward cannot control the quality of products sold by unauthorized sellers, our limited warranties apply only to a product that was purchased from Hayward or a Hayward authorized seller, unless otherwise prohibited by law." Here is a screen shot of the warranty page on Hayward's website:



hayward.com/warranty, redirected to hayward.com/support/resources/warranty (last accessed on February 25, 2025)\

63.     Despite Hayward's disclaimers, consumers have blamed Hayward for not honoring warranties for products that were not sold by Authorized Sellers, thus, causing further damage to Hayward's reputation, as shown below.



(Last accessed February 25, 2025, https://www.amazon.com/product-reviews/B07SPM1JM7/ref=acr_dp_hist_1?ie=UTF8&filterByStar=one_star&reviewerType=all_reviews#reviews-filter-bar.)

64.     Amazon does not allow product reviews to identify the seller that sold the product that is the subject of the product review. Given that Defendants have sold a high volume of products bearing the Hayward Trademarks on Amazon and are not subject to Hayward's quality controls, however, it is likely that some or most of the foregoing negative reviews, and others not shown here, were written by customers who purchased products bearing the unauthorized Hayward Trademarks from Defendants.

65.     Indeed, Hayward discovered that, in fact, consumers have also reviewed GSA Pool Services generally as an Amazon storefront and complained of GSA's unprofessionalism and lack of communication:



> ⭐☆☆☆☆ "I been wanting for this filter more than 3 weeks, i do not recommend this company, they are not professionals on top of that no even a simple e mail , finally I got my money back"
>
> Read less
>
> By Ruben on June 22, 2024.
>
> "your issue was fixed already, The UPS lost your package, is necessary open a claim with amazon customer service, it not our fault. i am so sorry about it."
>
> By GSA POOL SERVICES on June 26, 2024.

https://www.amazon.com/sp?ie=UTF8&seller=A2B5L3G0F5UVO&asin=B07G8P8Y7C&ref_=dp_merchant_link&isAmazonFulfilled=1 (last accessed on February 25, 2025).

66.     Moreover, at least one consumer has reviewed GSA Pool Services on another platform, Nextdoor.com, and has criticized GSA Pool Services for not honoring their refund from an Amazon purchase:



> **D. M.**
> Orlando, FL • 9 Aug 22
>
> GSA - Pool Services. Ordered part from GSA over three weeks ago and following day both my credit card was charged and I got message stating that package was undeliverable and I would receive refund. It's been three weeks, with no communication, update or refund. I'd stay away from this company at all costs, seems to have some shady dealings. I've spent hours on Amazon trying to reach someone either from Amazon or this company and absolutely no luck. So I had to spend an hour this morning at my bank to start the charge dispute. I'm sure more wasted time and paperwork is ahead for me to receive what is owed...
>
> ♡ Like      ⤳ Share

https://nextdoor.com/pages/gsa-providing-services-carrollton-tx/ (last accessed February 25, 2025).

**D. Hayward Has Implemented Strict Quality Controls to Combat the Problems Presented by the Online Marketplaces, Protect the Value of the Hayward Trademarks, and Ensure Customers Receive the Genuine, High Quality Products They Expect From Hayward**

67. Recognizing the risks to consumers and to the Hayward reputation caused by the sale of poor quality Hayward Products, Hayward has implemented quality controls that apply to Hayward Products sold in both brick-and-mortar retail settings and online with the twin aims of protecting consumers and the value and goodwill associated with the Hayward brand.

68. The goal of these quality controls is to ensure that consumers who purchase Hayward Products online receive products that feature all of the special characteristics that consumers have come to expect from products sold under the Hayward name – including quality and reliability.

69. The quality controls seek to minimize the likelihood that poor quality products will reach consumers. Preventing consumers from receiving damaged, defective, and poor quality products protects consumers from confusion and unsafe products and protects the value and goodwill associated with the Hayward brand.

70. Hayward abides by its quality control requirements and requires its Authorized Sellers to abide by the quality control requirements.

71. Hayward's ability to exercise these quality controls is essential to the integrity, safety, and quality of Hayward Products, as well as the value of the Hayward Trademarks and other intellectual property.

**E. Authorized Sellers Are Required to Adhere to Hayward's Quality Control and Customer Service Requirements**

72. Hayward maintains strict quality controls over Hayward Products by selling its products to customers through its network of Authorized Sellers.

73.     Hayward permits Authorized Sellers to sell Hayward Products in specific channels (online v. brick and mortar) and requires Authorized Sellers to abide by applicable authorized seller policies and agreements relating to quality controls, customer service, and other sales practices (collectively, the "Hayward Policies.")

74.     The Hayward Policies limit to whom and where Authorized Sellers may sell Hayward Products online. Hayward permits authorized resellers to sell Hayward Products only to end users. Authorized resellers are specifically prohibited from selling products to other resellers or to anyone who intends to resell the products. In that way, Hayward can maintain its quality controls because it can track its Authorized Sellers to ensure that they are abiding by the Hayward Policies.

75.     Authorized Sellers are also prohibited from selling products on unauthorized websites, including third-party marketplaces such as Amazon, eBay, Jet, Walmart Marketplace, or Sears Marketplace, without prior written consent of Hayward.

76.     These restrictions are essential to Hayward's ability to exercise its quality controls over Hayward Products because they allow Hayward to track which of its Authorized Sellers are approved to sell online and where its Authorized Sellers are selling online. If a quality issue arises through an online sale, Hayward can identify the Authorized Seller that made the sale, contact the Authorized Seller, and address the issue immediately. Hayward is unable to take such action against unauthorized sellers because, for example, it does always know who these sellers are and cannot obtain their cooperation in addressing any product quality issues that may arise.

77.     In addition to restricting where and how Authorized Sellers can sell Hayward Products, the Hayward Policies also require Authorized Sellers to adhere to Hayward's quality control requirements related to the inspection, handling, and storage of Hayward Products.

78.     To ensure that customers receive the genuine and high-quality products they expect from Hayward, the Hayward Policies require that Authorized Sellers inspect all Hayward Products for damage, defects, broken seals, evidence of tampering, and other non-conformance and remove all such products from inventory. Authorized Sellers are prohibited from selling damaged or defective products. Further, to assist Hayward in identifying any product quality issues, Authorized Sellers are required to report any defects to Hayward.

79.     The Hayward Policies also require that Authorized Sellers comply with all instructions provided by Hayward regarding product storage, handling, and shipping. This requirement helps ensure that Hayward Products are stored properly and are not damaged prior to being shipped to the consumer.

80.     To avoid consumer confusion and ensure that customers receive genuine Hayward Products, Authorized Sellers are prohibited from relabeling, repackaging, or altering Hayward Products.  Authorized Sellers must not remove, translate, or modify the contents of any label or literature on or accompanying Hayward Products.  Further, Authorized Sellers are prohibited from tampering with, defacing, or otherwise altering any identifying information on Hayward Products, including any serial number, UPC code, batch or lot code, or other identifying information.

81.     Hayward also ensures that consumers receive safe products by requiring that Authorized Sellers assist with recalls and other consumer safety information efforts.

82.     The Hayward Policies also require that Authorized Sellers provide certain services to their customers.  Authorized Sellers must familiarize themselves with the special features of all Hayward Products kept in their inventory.  This requirement ensures that Authorized Sellers are uniquely qualified to advise customers on the selection and safe use of Hayward Products.

83. Following the sale of Hayward Products, Authorized Sellers supply ongoing support to end-user consumers and are required to provide customer service and support by promptly responding to consumer inquiries.

84. Hayward's quality control requirements are legitimate and substantial and have been implemented so that Hayward can control the quality of goods manufactured and sold under the Hayward Trademarks, so as to protect consumers, as well as the value and goodwill associated with the Hayward Trademarks.

85. Hayward's quality control requirements are also material, as they are designed to protect consumers and prevent them from receiving poor quality products. Consumers would find it material and relevant to their purchasing decision to know whether a Hayward Product they were considering buying was being sold by an Authorized Seller who is subject to Hayward's quality control requirements or whether the product is being sold by an unauthorized seller who is not subject to, and does not abide by, Hayward's quality controls and over whom Hayward is unable to exercise its quality controls.

**F. Given the Flood of Poor-Quality Products Being Sold by Unauthorized Sellers on Online Marketplaces and Consumers' Inability to Inspect Such Products, Hayward Imposes Additional Requirements on Its Authorized Sellers Who Sell Online**

86. Given the many unscrupulous resellers, like Defendants, selling products online today, an Authorized Seller wishing to sell Hayward Products online must first be vetted and approved by Hayward to be an authorized online reseller ("Authorized Online Reseller") and must abide by Hayward's Authorized Online Reseller Policy and Online Reseller Agreement. Authorized Online Resellers may sell Hayward Products only on websites and through marketplace storefronts that Hayward has specifically approved, which again allows Hayward to have full visibility and oversight over those parties authorized to sell their products online.

87. Authorized Online Resellers are vetted by Hayward to ensure that they meet Hayward's criteria and that they will properly represent the Hayward brand.

88. Critical to Hayward's ability to exercise its quality controls over products sold online is that Hayward must know where its Authorized Online Resellers are selling online, and if they are selling on an online marketplace, under what storefront names. Accordingly, Authorized Online Resellers are prohibited from selling anonymously and must clearly state their business name and current contact information on all websites where they sell. This requirement allows Hayward to verify its Authorized Online Resellers and to immediately address any quality issues or negative reviews that arise.

89. Authorized Online Resellers must also have an acceptable online review history, without a significant presence of negative product or seller reviews.

90. In addition to complying with the quality controls and customer service requirements discussed above, Authorized Online Resellers must also adhere to several additional requirements.

91. Authorized Online Resellers must comply with all applicable data security, accessibility, and privacy requirements.

92. Unless otherwise approved by Hayward, Authorized Online Resellers must agree to not fulfill orders in any way that results in the shipped product not coming from product stock in the Authorized Online Resellers' possession.

93. Authorized Online Resellers must not sell Hayward's "Expert Line" products online. (Expert Line products are configured for brick-and-mortar retailers and pool maintenance professionals.)

94.     Authorized Online Resellers must have a mechanism for soliciting customer feedback/reviews and must take appropriate steps to address that feedback. Authorized Online Resellers must also cooperate with Hayward in investigating any negative product reviews. Again, this is a critical component of Hayward's quality control program because it allows Hayward to quickly address quality issues that arise, which they are unable to do for products sold by unauthorized sellers like Defendants.

95.     To further its efforts and ability to assure product quality and adherence to its quality control standards, protect the value and goodwill associated with the Hayward brand, and to prevent consumer confusion about the source of products consumers purchase, Hayward sells products on Amazon through certain pre-approved storefronts. This limitation allows Hayward to closely monitor seller and product reviews and to promptly address any product quality issues. This limitation also helps prevent the confusion that exists when consumers are presented with many Amazon sellers but are unable to discern which sellers are authorized and which are selling products that are subject to and protected by Hayward's quality controls.

96.     Hayward does not permit any Hayward Products sold on Amazon to be commingled with the products of other sellers in Amazon warehouses and prevents orders from being fulfilled in any way that potentially results in delivery to the consumer of a product from a different seller's stock. This requirement helps to ensure that consumers who purchase products through Hayward's Authorized Amazon Seller receive genuine Hayward Products. Most sellers who store products in Amazon's warehouses allow their products to be commingled with other sellers' inventory. As such, when a consumer purchases a product through a particular storefront, the consumer could receive a product that came from the inventory of a number of different sellers, including a product that is counterfeit. Hayward's anti-commingling quality control requirement

prevents this from happening and ensures that the Hayward Products that are sold on Amazon are products that were distributed through Hayward's authorized channels and comply with Hayward's quality controls.

97. The additional quality control requirements that Hayward imposes on its Authorized Online Resellers are legitimate and substantial and have been implemented to allow Hayward to control the quality of Hayward Products that are sold on the online marketplaces and quickly address any quality issues that arise.

98. These quality controls are also material because they have been implemented to ensure that consumers purchasing Hayward Products on the online marketplaces receive genuine, high-quality Hayward Products that abide by Hayward's quality controls. Consumers purchasing Hayward Products on the online marketplaces would find it relevant to their purchasing decision to know whether the product they are purchasing is being purchased from an Authorized Online Reseller who is subject to, and abides by, Hayward's quality controls.

G. **Hayward Audits Its Authorized Online Resellers to Ensure They Comply with Hayward's Quality Control Requirements**

99. In order to ensure that its Authorized Online Resellers adhere to Hayward's quality control requirements, Hayward regularly monitors sales of its products online and on the online marketplaces.

100. Pursuant to this program, Hayward monitors Authorized Online Resellers and online product and seller reviews, conducts test purchases and inspections, and confirms its Authorized Online Resellers' compliance with all of its quality control and Authorized Online Reseller requirements.

101.     Hayward is also able to communicate with its Authorized Online Resellers to understand the nature of any product quality issues or negative reviews and to facilitate appropriate follow-on action items.

102.     To further ensure that Authorized Online Resellers are complying with the various quality control requirements, Hayward is also able to withhold rebates or other sales incentives until problems are corrected.

**H.     Genuine Hayward Products Come with a Coverage Under Hayward's Warranty Program; Defendants' Products Do Not**

103.     Hayward Products purchased from Authorized Sellers also come with coverage under Hayward's warranty program (the "Warranty Program").  Under the Warranty Program, Hayward warrants to the original purchaser of Hayward Products that their Hayward product and its components will be free from defects in materials and workmanship for a specific period of time set forth by the model-specific warranty.

104.     As prefaced in Section C above, Hayward extends Warranty Program coverage only to products that were sold by Authorized Sellers that are subject to Hayward quality controls. Because products sold by unauthorized sellers are not subject to Hayward quality controls and Hayward cannot ensure the quality of such products, Hayward does not extend Warrant Program coverage to products sold by unauthorized sellers, including Defendants.

105.     The Warranty Program states that because Hayward cannot control the quality of its products sold by unauthorized sellers, the "limited warranties apply only to a product that was purchased from Hayward or a Hayward authorized seller[.]"   Below is a screenshot from Hayward's website containing displaying information about the Warranty Program. The sentence quoted above is circled in red.

*See* Hayward Pool Product Registration, available at https://www.hayward.com/warranty (last accessed February 25, 2025).

106. The Warranty Program is a material component of genuine Hayward Products. Consumers who purchase Hayward Products with the Warranty Program receive the peace of mind that they are receiving a high-quality product that Hayward stands behind the product, and that if a defect occurs, they will have the ability to have the product repaired or refunded.

107.

## I. Defendants Are Not Authorized Sellers or Authorized Online Resellers and, without Permission, Are Selling Products Bearing the Hayward Trademarks

108. In addition to auditing its Authorized Online Resellers, due to the risks to consumers and the reputational concerns associated with the illegal sale of products bearing the Hayward Trademarks by unauthorized internet sellers, Hayward polices the sale of its products online.

109. In the course of monitoring online listings of Hayward Products, Hayward discovered a high volume of products bearing the Hayward Trademarks that Defendants are, without permission, selling on Amazon under the storefront name "GSA POOL SERVICES." One example is pasted below.



110.    As seen in the example above, the listed product appears in all respects to be a genuine Hayward Product, and the Hayward Trademarks are used in the headline.  A consumer may be misled by this advertising and not notice that the seller is actually GSA POOL SERVICES (as shown in yellow highlighting above).

111.    Another online listing from GSA POOL SERVICES offering a Hayward product is featured below.



112. This example shows that the product appears to be a genuine Hayward Product, with the Hayward trademark used in the headline and, appearing just below the headline, the statement to "visit the Hayward Store." Consumers are likely to be misled by this advertisement and not notice that GSA POOL SERVICES is the seller.

113. In another example, GSA POOL SERVICES offers for sale a "Hayward Pool Filter," and consumers are directed to once again, "[v]isit the Hayward Store," as shown below.



114. In another example from GSA's Amazon Storefront shown below, GSA offers for sale a "Hayward Pool Pump," and the listing features the HAYWARD® mark in the headline, in the description ("Brand:        Hayward"), and in the "About this item" section. Once again, consumers are directed to "[v]isit the Hayward store" directly under the headline.



115. As an example from America Pool Supply's Amazon Storefront shown below, America Pool Supply offers for sale a "Hayward W3AQR9 AquaRite Salt Chlorination System," and the listing features the HAYWARD® mark in the headline, in the description ("Brand: Hayward"), and in the "About this item" section. Similar to the above examples, consumers are directed to "[v]isit the Hayward store" directly under the headline. But again, consumers are likely to be misled by this advertisement and not notice that AMERICA POOL SUPPLY is the seller, not Hayward or an authorized seller.



https://www.amazon.com/Hayward-W3AQR9-Electronic-Chlorination-000-Gallon/dp/B07ST63P4W?dib=eyJ2IjoiMSJ9.fICxXL0PNKoe9hlbAiRc9Q01rD_URiZb5mJJbVEqcx-Or5sH4an-wZMLpGgAe4EDIi-j822quNNbrmVd2u-JGlDEHm1VC_b9hA80M3Sve6ZQadqyj7MR_3AdzkAtJfIAvXRiISPhqx0QdGlMfj2cv-VI9hgM62fQyQcKCnPE25bJt6al-4-Y080luq8DEeFe89XN6kccv1m0Xgxk1xjoqYKIlBDQpKfOCoJNuzSwJyM.zYqyHdEs0SscWl5CjSEk2X6WOoe8B3Ng2pnK3OnVaPNA&dib_tag=se&m=AM3P58WBWG1RO&marketPlaceID=ATVPDKIKX0DER&qid=1740518303&s=merchant-items&sr=1-8&th=1 (last accessed February 25, 2025).

116. Similarly confusing and deceptive advertisements also include:



https://www.amazon.com/SwimPure-Extreme-Hayward-40gal-TurboCell/dp/B07G8P8Y7C?dib=eyJ2IjoiMSJ9.yrX_tj6vYpmjaFxDSS3WPctWJSNTfqjHsfR7xyi0yIkIx56nxhylXPfTGF9L5ASXDj540mjT2I9tVUMB2XMg7nXJsiHUiZvKb8RDufRpjga-8aU2Ged3UFZ9I1oU_n-1JwiDB1AJkJxxUBLcXhhgNZhUnNQZfD1ljpKzxad2SbgVFMAOBiUvrC809pzxzg8EiFvm16MPsxVAEbKoni4HMugZNB0n0ZXN9PeJwl40V2k.ecyBxYMrsgw7A9lj9h6WSjdK46Boa51a9v_w_houzgM&dib_tag=se&m=AM3P58WBWG1RO&marketplaceID=ATVPDKIKX0DER&qid=1740518654&s=merchant-items&sr=1-20&xpid=U3HQtpW2bWsp_ (accessed February 25, 2025)



https://www.amazon.com/Hayward-W3S180T-ProSeries-18-Inch-Top-Mount/dp/B07SS48CCX?dib=eyJ2IjoiMSJ9.yrX_tj6vYpmjaFxDSS3WPctWJSNTfqjHsfR7xyi0yIkIx56nxhylXPfTGF9L5ASXDj540mjT2I9tVUMB2XMg7nXJsiHUiZvKb8RDufRpjga-8aU2Ged3UFZ9I1oU_n-1JwiDB1AJkJxxUBLcXhhgNZhUnNQZfD1ljpKzxad2SbgVFMAOBiUvrC809pzxzg8EiFvm16MPsxVAEbKoni4HMugZNB0n0ZXN9PeJwl40V2k.ecyBxYMrsgw7A9lj9h6WSjdK46Boa51a9v_w_houzgM&dib_tag=se&m=AM3P58WBWG1RO&marketplaceID=ATVPDKIKX0DER&qid=1740518654&s=merchant-items&sr=1-21&xpid=U3HQtpW2bWsp_&th=1 (accessed February 25, 2025)

117. Defendants are not Authorized Sellers of Hayward Products and are not subject to, and do not comply with, Hayward's Authorized Seller requirements or the Hayward Policies.

118.    Defendants are also not Authorized Online Resellers of Hayward Products and do not comply with the additional quality control requirements Hayward imposes on its Authorized Online Resellers.

119.    Defendants have not applied to be Authorized Online Resellers of Hayward Products and Hayward has not approved Defendants to be Authorized Online Resellers of its products.

120.    Defendants could not be approved as Authorized Online Resellers because they do not comply with Hayward's requirements.

121.    Defendants do not comply with Hayward's requirements because they do not have an acceptable online review history or business operating record.  As set forth below, multiple consumers have complained about the products Defendants sold to them and that Defendants are selling used and poor quality products.

122.    Despite not being approved as Authorized Sellers or Authorized Online Resellers and not meeting the quality control requirements Hayward imposes on its Authorized Sellers and Authorized Online Resellers, Defendants have sold, and continue to sell, products bearing the Hayward Trademarks on their Amazon storefront.

123.    Indeed, Defendants' product listings use the Hayward Trademarks in multiple places, including on photos of the products, in the headline, and in the description of the product, as shown in the examples above.

**J.    Defendants Do Not Abide by Hayward's Quality Controls and Customer Service Requirements**

124.    Defendants do not abide by Hayward's quality control measures that are imposed upon genuine Hayward Products.

125.    Defendants do not comply with Hayward's quality control requirements because they have not given Hayward an opportunity to vet them to determine if they meet Hayward's high level of standards that it demands of its Authorized Online Resellers.

126.    Defendants do not comply with Hayward's quality control requirements because they do not disclose their email address in their Amazon storefront .  Defendants' efforts at maintaining anonymity prevent Hayward from addressing any quality control issues or negative reviews that arise out of Defendants' sale of products bearing the Hayward Trademarks, such as the complaints discussed above.

127.    Defendants also do not comply with Hayward's quality control requirements because they have not disclosed to Hayward where they acquire products that bear the Hayward Trademarks.  Defendants' failure to provide such information prevents Hayward from determining if any products Defendants are selling or have sold are subject to a recall or consumer safety information effort.

128.    Defendants do not comply with Hayward's quality control inspection requirements because they do not inspect the products they sell for damage, defects, evidence of tampering, and other non-conformance and remove all such products from inventory; instead, they sell products bearing the Hayward Trademarks that are damaged, defective, and that have been tampered with.

129.    Defendants do not comply with Hayward's quality control storage requirements and do not store their products in accordance with the storage guidelines specified by Hayward.

130.    Defendants do not comply with Hayward's quality control requirements related to the handling, packaging, and shipping of products because they do not package and ship their products in accordance with Hayward's requirements and package and ship products in a manner that allows them to become damaged.

131.    Defendants' failure to abide by these quality controls interferes with Hayward's quality controls and prevents Hayward from exercising control over the quality of products Defendants sell bearing the Hayward Trademarks.  Hayward is unable to audit Defendants to ensure they are complying with Hayward's quality controls and/or close their account if they fail to comply with Hayward's quality control requirements.

132.    Defendants' failure to comply with these quality controls also interferes with Hayward's quality controls because it prevents Hayward from being able to obtain Defendants' assistance with any recall or consumer safety information efforts that may arise related to any products they are selling or have sold in the past.

133.    Defendants also do not comply with Hayward's customer service requirements because they are not qualified or trained to accurately describe, demonstrate, and sell the products in their inventory and to advise customers on Hayward products selection and safe use.

134.    Defendants also do not comply with Hayward's customer service requirements because they do not, and are unable to, provide the advice to consumers that Hayward requires of its Authorized Sellers and do not provide the type of ongoing support and response to consumer inquiries that Hayward requires of its Authorized Sellers.

135.    Defendants do not comply with Hayward's quality control and customer service requirements because they do not take appropriate steps to address negative reviews from customers and do not cooperate with Hayward in investigating negative product reviews.

**K.**     **Defendants Are Infringing on the Hayward Trademarks By Selling Products Bearing The Hayward Trademarks That Do Not Come With Warranty Program Coverage, and Are Not Subject to, Do Not Abide by, and Interfere with Hayward's Quality Controls and Customer Service Requirements**

136.     For all of the reasons set forth above, the products Defendants sell bearing the Hayward Trademarks fail to adhere to the extensive and legitimate quality controls that Hayward exercises over Hayward Products to protect consumers and Hayward's brand goodwill.

137.     The products sold by Defendants do not come with Warranty Program coverage.

138.     The products sold by Defendants are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

139.     Because the products Defendants sell do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Hayward Products.

140.     Because the products Defendants sell do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are not genuine Hayward Products.

141.     Defendants' unauthorized sale of products bearing the Hayward Trademarks is likely to, and does, create customer confusion because customers who purchase products from Defendants believe they are purchasing genuine Hayward Products, when, in fact, they are not.

142.     Defendants' unauthorized sale of products bearing the Hayward Trademarks infringes on the Hayward Trademarks and diminishes their value.

143.     Despite these facts, Defendants have sold, and continue to sell, products bearing the Hayward Trademarks through their Amazon Storefront without Hayward's consent.

144. Through their interactive Amazon Storefront, Defendants have advertised and marketed infringing products bearing the Hayward Trademarks to consumers in North Carolina.

145. On information and belief, through their interactive Amazon Storefronts, Defendants advertise to residents and/or sold to consumers in North Carolina.

146. On information and belief, through their interactive Amazon Storefront, Defendants have advertised and/or sold infringing products bearing the Hayward Trademarks to North Carolina through the regular course of business.

**L.     Hayward Has Repeatedly Attempted to Stop Defendants' Illegal Sale of Products Bearing the Hayward Trademarks But Defendants Continue to Willfully Infringe on the Hayward Trademarks**

147. After Hayward discovered products bearing the Hayward Trademarks being illegally sold on the "GSA POOL SERVICES" and "AMERICA POOL SUPPLY" storefronts, Hayward investigated the storefront to determine who was operating the storefront.

148. Because Defendants initially did not disclose their complete contact information on their Amazon Storefront, Hayward had to spend significant time and money investigating the Amazon Storefront to attempt to identify the sellers connected to the storefront.

149. After conducting an investigation, Hayward identified Defendant Gleidson Azevedo as the owner and operator of the "GSA POOL SERVICES" and "AMERICA POOL SUPPLY" storefront.

150. Hayward sent a cease-and-desist letter to Defendant Azevedo notifying him of his illegal conduct.  In that letter, Hayward warned Azevedo that he and his co-defendants were infringing on the Hayward Trademarks, tortiously interfering with Hayward's contracts, and causing harm to Hayward and its Authorized Resellers.  Hayward demanded that Azevedo and GSA immediately stop selling products bearing the Hayward Trademarks.

43

151.    Defendants did not comply with Hayward's demands and continued selling products bearing the Hayward Trademarks on their Amazon Storefront.

152.    Hayward then followed up with a second cease-and-desist letter.

153.    Defendants still did not comply with Hayward's demands and continue to sell products bearing the Hayward Trademarks on their Amazon Storefront.

154.    Defendants have refused to comply with the letters Hayward has sent them and continue to engage in their illegal activities and sale of products bearing the Hayward Trademarks.

155.    As discussed above, the products that Defendants sell are not genuine Hayward Products and are materially different from genuine Hayward Products because they are not subject to, interfere with, and do not comply with Hayward's quality controls.

156.    By continuing to sell non-genuine products bearing the Hayward Trademarks, Defendants have interfered with Hayward's ability to exercise control over products being sold bearing the Hayward Trademarks.

157.    Defendants have also misled, and continue to mislead, consumers into believing they are purchasing genuine Hayward Products that comply with Hayward's quality controls when, in fact, they do not.

158.    Defendants' actions infringe on the Hayward Trademarks.

159.    Further, Defendants' disregard of communications from Hayward and continued selling of non-genuine products, despite being informed of their unlawful conduct, demonstrates that they are acting intentionally, willfully, and maliciously.

**M.    Defendants Are Tortiously Interfering with Hayward's Agreements
With Its Authorized Sellers**

160.    Upon information and belief, Defendants have purchased Hayward Products from Hayward's Authorized Sellers for purposes of unlawfully infringing upon and materially damaging

the value of the Hayward Trademarks by reselling the products on the internet without Hayward's approval.

161.    Hayward's agreements with its Authorized Sellers prevent those Authorized Sellers from selling Hayward Products to third parties who are not authorized sellers of Hayward Products but intend to resell the products anyway.

162.    Defendants were informed of this prohibition in Hayward's previous cease-and-desist letters. The letters informed Defendants that the contracts between Hayward and Hayward's Authorized Sellers prohibit Authorized Sellers from selling Hayward Products to any person or entity that is not an Authorized Seller but intends to resell the products.

163.    Hayward also informed Defendants that by purchasing Hayward Products from an Authorized Seller for purposes of resale, they were causing a breach of the agreements between Hayward and its Authorized Sellers and interfering with Hayward's agreements and business relationships.

164.    Hayward also warned Defendants that if they continued to acquire Hayward Products from Hayward's Authorized Sellers for purposes of reselling them, they would be liable for tortiously interfering with Hayward's contracts and/or business relationships.

165.    Despite being so warned, Defendants have continued to acquire Hayward Products from Hayward's Authorized Sellers with the intent to resell them.

166.    Upon information and belief, Defendants do not disclose to Authorized Sellers that they intend to resell the Hayward Products they purchase from Authorized Sellers.

167.    Defendants have willfully and knowingly induced and are continuing to induce unknown Authorized Sellers to breach their agreements with Hayward so that they can acquire

Hayward Products and unlawfully infringe upon the Hayward Trademarks by reselling the products.

**N.  Hayward Has Suffered Significant Harm as a Result of Defendants' Conduct**

168.  As set forth above, the unauthorized sale of products bearing the Hayward Trademarks through unauthorized sellers, such as Defendants, has caused significant harm to the Hayward brand.

169.  When a consumer receives a non-genuine, damaged, or poor-quality products from an unauthorized seller, such as Defendants, the consumer associates that negative experience with Hayward.  As such, Defendants' ongoing sale of unauthorized products bearing the Hayward Trademarks harms Hayward and the Hayward brand.

170.  Hayward has suffered, and will continue to suffer, significant monetary harm as a result of Defendants' actions, including, but not limited to, loss of sales, damage to its intellectual property, and damage to its existing and potential business relations.

171.  Hayward has suffered, and will continue to suffer, irreparable harm to its reputation, goodwill, business and customer relationships, intellectual property rights, and brand integrity.

172.  Hayward is entitled to injunctive relief because Defendants will continue to unlawfully sell Hayward Products and infringe on the Hayward Trademarks, causing continued irreparable harm to Hayward's reputation, goodwill, relationships, intellectual property, and brand integrity.

173.  Defendants' conduct was knowing, intentional, willful, malicious, wanton, and contrary to law.

174.  Defendants' willful violations of the Hayward Trademarks and continued pattern of misconduct demonstrate intent to harm Hayward.

46

# FIRST CAUSE OF ACTION
## Trademark Infringement in Violation of Sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a)(1)(a)

175. Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

176. Hayward is the owner of the Hayward Trademarks.

177. Hayward has registered the Hayward Trademarks with the United States Patent and Trademark Office.

178. The Hayward Trademarks are valid and in full force and effect.

179. Defendants, at the direction and control of Azevedo, willfully and knowingly used, and continue to use, the Hayward Trademarks in interstate commerce for purposes of selling products bearing the Hayward Trademarks on the internet without Hayward's consent.

180. The products Defendants sell bearing the Hayward Trademarks are not authorized for sale by Hayward.

181. The products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage.

182. Hayward has established and implemented legitimate and substantial quality controls that genuine Hayward Products must comply with.

183. Hayward abides by these quality controls and requires all of its Authorized Sellers and Authorized Online Resellers to abide by these quality controls.

184. Hayward's quality controls are material, as they protect consumers and prevent them from receiving poor quality, damaged, and defective products.

185. The products Defendants sell bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

186.     Because the products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Hayward Products.

187.     Because the products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are not genuine Hayward Products.

188.     Defendants' unauthorized sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

189.     Defendants' unauthorized sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer are subject to and abide by Hayward's quality controls when, in fact, they do not.

190.     Defendants' unauthorized sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine Hayward Products when, in fact, they are not.

191.     Defendants' unauthorized sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored by, authorized by, or otherwise connected with Hayward when, in fact, they are not.

192.    Defendants' unauthorized use of the Hayward Trademarks has infringed upon and materially damaged the value of the Hayward Trademarks and caused significant damage to Hayward's business relationships.

193.    As a proximate result of Defendants' actions, Hayward has suffered, and continues to suffer, immediate and irreparable harm.  Hayward has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

194.    Hayward is entitled to recover its damages caused by Defendants' infringement of the Hayward Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

195.    Hayward is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Hayward will suffer irreparable harm.

196.    Hayward is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Hayward Trademarks.

## SECOND CAUSE OF ACTION
### Unfair Competition in Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)

197.    Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

198.    Hayward is the owner of the Hayward Trademarks.

199.    Hayward has registered the Hayward Trademarks with the United States Patent and Trademark Office.

200.     The Hayward Trademarks are valid and subsisting trademarks in full force and effect.

201.     Defendants, at the direction and control of Azevedo, have willfully and knowingly used, and continue to use, the Hayward Trademarks in interstate commerce for purposes of selling products bearing the Hayward Trademarks without Hayward's consent.

202.     The products Defendants advertise and sell bearing the Hayward Trademarks are not authorized for sale by Hayward.

203.     The products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage.

204.     Hayward has established and implemented legitimate and substantial quality controls that genuine Hayward Products must comply with.

205.     Hayward abides by these quality controls and requires all of its Authorized Sellers to abide by these quality controls.

206.     Hayward's quality controls are material, as they protect consumers and prevent them from receiving poor quality, damaged, and defective products.

207.     The products Defendants advertise and sell bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

208.     Because the products Defendants advertise and sell bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Hayward Products.

209. Because the products Defendants advertise and sell bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants advertise and sell are not genuine Hayward Products.

210. Defendants' unauthorized advertisement and sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

211. Defendants' unauthorized advertisement and sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer are subject to and abide by Hayward's quality controls when, in fact, they do not.

212. Defendants' unauthorized advertisement and sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants advertise and offer for sale are genuine Hayward Products when, in fact, they are not.

213. Defendants' unauthorized advertisement and sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants advertise and offer for sale are sponsored by, authorized by, or otherwise connected with Hayward when, in fact, they are not.

214. Defendants' unauthorized use of the Hayward Trademarks has infringed upon and materially damaged the value of the Hayward Trademarks and caused significant damage to Hayward's business relationships.

215. As a proximate result of Defendants' actions, Hayward has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

216. Hayward is entitled to recover its damages caused by Defendants' infringement of the Hayward Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

217. Hayward is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Hayward will suffer irreparable harm.

218. Hayward is entitled to enhanced damages and attorneys' fees under 15 U.S.C. § 1117(a) because Defendants willfully, intentionally, maliciously, and in bad faith infringed on the Hayward Trademarks.

**<u>THIRD CAUSE OF ACTION</u>**
**Unfair Competition and False Designation of Origin in Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

219. Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

220. Hayward is the owner of the Hayward Trademarks.

221. Hayward has registered the Hayward Trademarks with the United States Patent and Trademark Office.

222. The Hayward Trademarks are valid and subsisting trademarks in full force and effect.

223. Defendants, at the direction and control of Azevedo, have willfully and knowingly used, and continue to use, the Hayward Trademarks in interstate commerce for purposes of selling products bearing the Hayward Trademarks without Hayward's consent.

224. The products Defendants advertise and sell bearing the Hayward Trademarks are not authorized for sale by Hayward.

225. The products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage.

226. Hayward has established and implemented legitimate and substantial quality controls that genuine Hayward Products must comply with.

227. Hayward abides by these quality controls and requires all of its Authorized Sellers to abide by these quality controls.

228. Hayward's quality controls are material, as they protect consumers and prevent them from receiving poor quality, damaged, and defective products.

229. The products Defendants advertise and sell bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

230. Because the products Defendants advertise and sell bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Hayward Products.

231. Because the products Defendants advertise and sell bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by,

and interfere with Hayward's quality controls and customer service requirements, the products Defendants advertise and sell are not genuine Hayward Products.

232.     Defendants' unauthorized advertisement and sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

233.     Defendants' unauthorized advertisement and sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer are subject to and abide by Hayward's quality controls when, in fact, they do not.

234.     Defendants' unauthorized advertisement and sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants advertise and offer for sale are genuine Hayward Products when, in fact, they are not.

235.     Defendants' unauthorized advertisement and sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants advertise and offer for sale are sponsored by, authorized by, or otherwise connected with Hayward when, in fact, they are not.

236.     Defendants' unauthorized use of the Hayward Trademarks has infringed upon and materially damaged the value of the Hayward Trademarks and caused significant damage to Hayward's business relationships.

237.     Defendants' unauthorized use of the Hayward Trademarks, as described above, constitutes unfair competition and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

238.    As a proximate result of Defendants' actions, Hayward has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

239.    Hayward is entitled to recover its damages caused by Defendants' infringement of the Hayward Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

240.    Hayward is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Hayward will suffer irreparable harm.

**FOURTH CAUSE OF ACTION**
**Unfair Competition in Violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by Passing Off**

241.    Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

242.    Hayward is the owner of the Hayward Trademarks.

243.    Hayward has registered the Hayward Trademarks with the United States Patent and Trademark Office.

244.    The Hayward Trademarks are valid and subsisting trademarks in full force and effect.

245.    Defendants, at the direction and control of Azevedo, have willfully and knowingly used, and continue to use, the Hayward Trademarks in interstate commerce for purposes of selling products bearing the Hayward Trademarks without Hayward's consent.

246.    The products Defendants advertise and sell bearing the Hayward Trademarks are not authorized for sale by Hayward.

247. The products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage.

248. Hayward has established and implemented legitimate and substantial quality controls that genuine Hayward Products must comply with.

249. Hayward abides by these quality controls and requires all of its Authorized Sellers to abide by these quality controls.

250. Hayward's quality controls are material, as they protect consumers and prevent them from receiving poor quality, damaged, and defective products.

251. The products Defendants advertise and sell bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

252. Because the products Defendants advertise and sell bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Hayward Products.

253. Because the products Defendants advertise and sell bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants advertise and sell are not genuine Hayward Products.

254. Defendants' unauthorized advertisement and sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

255. Defendants' unauthorized advertisement and sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer are subject to and abide by Hayward's quality controls when, in fact, they do not.

256. Defendants' unauthorized advertisement and sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants advertise and offer for sale are genuine Hayward Products when, in fact, they are not.

257. Defendants' unauthorized advertisement and sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants advertise and offer for sale are sponsored by, authorized by, or otherwise connected with Hayward when, in fact, they are not.

258. Defendants' unauthorized use of the Hayward Trademarks has infringed upon and materially damaged the value of the Hayward Trademarks and caused significant damage to Hayward's business relationships.

259. Defendants' unauthorized use of the Hayward Trademarks, as described above, constitutes unfair competition and passing off in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

260. As a proximate result of Defendants' actions, Hayward has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

261. Hayward is entitled to recover its damages caused by Defendants' infringement of the Hayward Trademarks and disgorge Defendants' profits from their willfully infringing sales and unjust enrichment.

262. Hayward is entitled to injunctive relief under 15 U.S.C. § 1116 because it has no adequate remedy at law for Defendants' infringement and unless Defendants are permanently enjoined, Hayward will suffer irreparable harm.

**FIFTH CAUSE OF ACTION**
**Trademark Infringement and Unfair Competition**
**under North Carolina Common Law**

263. Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

264. This claim arises under the laws of the State of North Carolina.

265. Hayward is the owner of the Hayward Trademarks.

266. Hayward has registered the Hayward Trademarks with the United States Patent and Trademark Office.

267. The Hayward Trademarks are valid and subsisting trademarks in full force and effect.

268. The Hayward Trademarks are distinctive and widely recognized by the consuming public. Hayward Products are sold and purchased through its website and its network of Authorized Sellers throughout the United States, including North Carolina.

269. Hayward is widely recognized as the designated source of goods bearing the Hayward Trademarks.

270. Defendants, at the direction and control of Azevedo, willfully and knowingly used, and continue to use, the Hayward Trademarks in interstate commerce for the purpose of

advertising, promoting and selling products bearing the Hayward Trademarks on the internet without Hayward's consent.

271. The products Defendants sell bearing the Hayward Trademarks are not authorized for sale by Hayward.

272. The products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage.

273. Hayward has established and implemented legitimate and substantial quality controls that genuine Hayward Products must comply with.

274. Hayward abides by these quality controls and require all of its Authorized Sellers to abide by these quality controls.

275. Hayward's quality controls are material, as they protect consumers and prevent them from receiving poor quality, damaged, and defective products.

276. The products Defendants sell bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements.

277. Because the products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Hayward Products.

278. Because the products Defendants sell bearing the Hayward Trademarks do not come with Warranty Program coverage and are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are not genuine Hayward Products.

279. Defendants' unauthorized sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

280. Defendants' unauthorized sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer are subject to and abide by Hayward's quality controls when, in fact, they do not.

281. Defendants' unauthorized sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine Hayward Products when, in fact, they are not.

282. Defendants' unauthorized sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored by, authorized by, or otherwise connected with Hayward when, in fact, they are not.

283. Defendants' unauthorized use of the Hayward Trademarks has infringed upon and materially damaged the value of the Hayward Trademarks and caused significant damage to Hayward's business relationships.

284. As a proximate result of Defendants' actions, Hayward has suffered, and will continue to suffer, damage to its business, goodwill, reputation, and profits in an amount to be proven at trial.

285. Hayward is entitled to recover punitive damages because Defendants have acted with malice and aggravated and egregious fraud.

286. Hayward is entitled to recover its attorneys' fees and costs.

## SIXTH CAUSE OF ACTION
### Violation of North Carolina Unfair and Deceptive Trade Practices Act
### § 75-1.1, *et seq.*

287.    Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

288.    Plaintiff is the owner of the Hayward Trademarks.

289.    The Hayward Trademarks have been registered with the USPTO.

290.    The Hayward Trademarks are valid and subsisting trademarks in full force and effect.

291.    Defendants willfully and knowingly used, and continue to use, the Hayward Trademarks in interstate commerce, including through their product listings on Amazon, for the purpose of advertising promoting, and selling products bearing the Hayward Trademarks without the consent of Hayward.

292.    Defendants' advertisements and promotions of products unlawfully using the Hayward Trademarks have been disseminated to the relevant purchasing public, including consumers in North Carolina.

293.    At all relevant times, Defendants were engaged in commerce in the State of North Carolina and were affecting North Carolina commerce.

294.    Defendants use the Hayward Trademarks with the intent that consumers will rely on Defendants' use of the Hayward Trademarks and believe that Defendants are selling genuine Hayward products.

295.    The products Defendants advertise, promote, and sell bearing the Hayward Trademarks are not authorized for sale by Hayward.

296.    Hayward has established legitimate and substantial quality control procedures over Hayward products.

297. Hayward abides by these quality control procedures and requires all of Authorized Sellers to abide by these quality controls.

298. Hayward's quality controls are material, as they protect consumers and prevent them from receiving poor quality products that could harm them. When a consumer is deciding whether to purchase a product bearing the Hayward Trademarks, whether the product is subject to and abides by Hayward's quality controls would be relevant to the consumers' purchasing decision.

299. The products Defendants advertise, promote, and sell bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements and do not come with Warranty Program coverage.

300. Because the products Defendants advertise, promote, and sell bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are materially different from genuine Hayward products.

301. The products Defendants sell are materially different from genuine Hayward products because they do not come with Warranty Program coverage.

302. Because the products Defendants advertise, promote, and sell bearing the Hayward Trademarks are not subject to, do not abide by, and interfere with Hayward's quality controls and customer service requirements, the products Defendants sell are not genuine Hayward products.

303. Defendants' unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks interferes with Hayward's quality controls and ability to exercise quality control over products bearing the Hayward Trademarks.

304.    Defendants' unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are subject to, and abide by, Hayward's quality controls and come with Warranty Program coverage when, in fact, they are not.

305.    Defendants' unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are genuine Hayward products when, in fact, they are not.

306.    Defendants' unauthorized advertisement, promotion, and sale of products bearing the Hayward Trademarks is likely to cause confusion, cause mistake, or deceive consumers because it suggests that the products Defendants offer for sale are sponsored, authorized, or otherwise connected with Hayward when, in fact, they are not.

307.    Defendants' unauthorized and deceptive use of the Hayward Trademarks is material and likely to influence customers to purchase the products they sell, as consumers are likely to believe that products Defendants advertise using the Hayward Trademarks are genuine Hayward products that are subject to, and abide by, Hayward's quality controls requirement and come with benefits associated with authentic Hayward products, when, in fact, they do not.

308.    Defendants' unauthorized use of the Hayward Trademarks in advertising, and otherwise, infringes on the Hayward Trademarks.

309.    Defendants' use of the Hayward Trademarks in connection with the unauthorized advertising, promotion, and sale of Hayward products is an unconscionable, deceptive, and fraudulent business practice which violates N.C. Gen. Stat. § 75-1.1 ("UDTPA").

63

310. Defendants misrepresent the Hayward products they sell as genuine Hayward Products by using the Hayward Trademarks on its product headlines and in the description of its products.

311. Defendants are trying to pass off their products as genuine Hayward products or are falsely associating their products with Hayward.

312. Defendants deceptively and confusingly suggest to consumers that Hayward has authorized or sponsored the products that they are selling, or that Defendants are somehow affiliated with Hayward, when they are not.

313. Defendants' actions and conduct were intended to and did cause and continues to cause confusion among consumers as to the designation and source of the products Defendants sell.

314. Defendants' conduct is calculated to deceive the public and constitutes unfair and deceptive business practices.

315. As a direct and proximate result of Defendants' unlawful, unfair, and infringement conduct, Plaintiff has suffered, and continues to suffer, immediate and irreparable harm. Plaintiff has also suffered, and continues to suffer, damages, including, but not limited to, loss of business, goodwill, reputation, and profits in an amount to be proven at trial.

316. Pursuant to N.C. Gen. Stat. § 75-1.1, Plaintiff is entitled to an injunction enjoining Defendants' unlawful conduct, and an award of treble damages and attorneys' fees. Unless enjoined by this Court, Defendants will continue to engage in unfair, unlawful, and misleading business practices as alleged in this complaint, in violation of the UDTPA. Hayward and the public will be irreparably harmed if an order of the Court enjoining such practices is not granted. Hayward is entitled to a preliminary and permanent injunction.

317. Hayward has no adequate remedy at law for the injury alleged in this cause of action and the injury is, in part, intangible in nature and not capable of being fully measured or valued entirely in terms of monetary damages.

## SEVENTH CAUSE OF ACTION
### Tortious Interference with Contract And Business Relations

318. Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

319. Hayward Products are sold exclusively through its website and through its network of Authorized Sellers.

320. Hayward has entered into agreements with Authorized Sellers to sell Hayward Products. These agreements specifically prohibit Hayward's Authorized Sellers from selling Hayward Products to unauthorized resellers, such as Defendants.

321. Defendants have sold a high volume of Hayward Products through their Amazon Storefront.

322. Hayward has not itself sold any Hayward Products to Defendants.

323. Based on these facts, it is plausible and a reasonable inference that Defendants have purchased the Hayward Products they are reselling, and have resold, from one or more of Hayward's Authorized Sellers.

324. Defendants knew that Hayward's agreements with its Authorized Sellers prohibit Hayward's Authorized Sellers from selling Hayward Products to any seller who, such as Defendants, is not an Authorized Seller and intends to resell the products.

325. Defendants had notice of this prohibition through the cease-and-desist letter they received from Hayward.

326.     Despite knowing of this prohibition, Defendants, at Azevedo's direction and control, intentionally, knowingly and willfully interfered with Hayward's agreements with its Authorized Sellers by inducing the Authorized Sellers to breach their agreements and sell products to Defendants so they could resell them on the internet.

327.     After being notified of this prohibition, Defendants intentionally induced one or more of Hayward's Authorized Sellers to breach their agreements by continuing to acquire products from Hayward's Authorized Sellers for the purposes of selling them on the internet.

328.     In inducing Hayward's Authorized Sellers to breach their contracts with Hayward, Defendants acted with a wrongful purpose—specifically, unlawfully infringing upon and materially damaging the value of the Hayward Trademarks by reselling the products they obtained from Authorized Sellers in violation of their contracts.

329.     Defendants also acted with wrongful means—specifically, upon information and belief, Defendants concealed and continue to conceal their intent to resell the Hayward Products when they purchase them from Authorized Sellers.

330.     Because Authorized Sellers are prohibited by contract from selling products to persons or entities who are not authorized sellers but intend to resell the products, Authorized Sellers would not have sold products to Defendants if they had known that Defendants intended to resell those products.

331.     Defendants knew that Authorized Sellers would be breaching their agreements by selling products to Defendants for purposes of resale, and would accordingly consider Defendants' intent to resell material to their decision to sell products to Defendants.

332.    Accordingly, Defendants' concealment of their intent to resell products is a wrongful omission of a material fact, which wrongfully induced Authorized Sellers to breach their agreements with Hayward.

333.    Authorized Sellers have complained to Hayward about Defendants' unauthorized reselling of Hayward Products and have threatened to discontinue their business relationship with Hayward because of Defendants' actions.

334.    Based on these facts, there is no justification for Defendants' actions.

335.    Hayward has no way of knowing the full extent of the sources of Defendants' products and, therefore, Hayward must take discovery in this action to learn the specific identities of the Authorized Sellers that sold Hayward Products to Defendants. Defendants, however, know the sources of the Hayward Products they have obtained and the basis for Hayward's claim of tortious interference. Hayward's agreements with its Authorized Sellers are a specific class of contract that Defendants caused Authorized Sellers to breach when they purchased Hayward Products from Authorized Sellers for resale.

336.    Defendants' actions have caused injury to Hayward for which Hayward is entitled to compensatory damages in an amount to be proven at trial.

337.    Hayward is entitled to recover punitive damages because Defendants have acted with malice and aggravated and egregious fraud.

338.    Hayward is entitled to recover its attorneys' fees and costs.

### EIGHTH CAUSE OF ACTION
**Contributory Infringement**
**(Against Gleidson da Silva Azevedo *a/k/a* Ricardo Azevedo Gomes Dos Santos)**

339.    Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

340.     At all material times, Defendants were controlled by Azevedo.  Mr. Azevedo is the managing member of Texas Frisco Supply LLC and G&S Pool Services and owner of GSA Pools Services, America Pool Supply,  and Zion Pool Supply. Texas Frisco Supply and G&S Pool Services appear to be the parent companies of the Amazon Storefronts and *d/b/a's* which may simply be aliases or alter egos of Azevedo.

341.     Moreover, Azevedo is directing, allowing, selling, encouraging the aliases or alter egos to sell and advertise infringing products that unfairly trade on the Hayward Marks in the United States.

342.     Hayward has warned Azevedo, and thereby GSA Pools, Zion Pool Supply, America Pool Supply, Texas Frisco Supply and G&S Pool Services on several occasions that the products are infringing and are otherwise unlawful.

343.     Despite these warnings, Azevedo, and by extension GSA Pools, Zion Pool Supply, America Pool Supply, Texas Frisco Supply and G&S Pool Services, refuse to change their conduct in connection with the Hayward Marks and products. As a result of such notice, Azevedo has actual knowledge of the infringing nature of the Defendants as alleged above.

344.     Azevedo contributed to or induced Defendants' infringement by allowing the infringing advertisements and in connection with the sale of the Hayward products.  Azevedo through the Defendants have advertised and sold these products without Hayward's authorization.

345.     This conduct has caused, and is continuing to cause, irreparable injury to Hayward, including to its reputation and goodwill, and Hayward has no adequate remedy at law. Defendants refuse to stop the unlawful activity.  Unless such unauthorized use is enjoined, Hayward will continue to be irreparably harmed.

346.     Azevedo conduct as described above, has been willful, wanton, reckless and in total disregard to Hayward's rights.

As a result of Azevedo's misconduct, Hayward has suffered and will continue to suffer, monetary damages and loss of goodwill.

### NINTH CAUSE OF ACTION
### Alter Ego Liability
### (Against Gleidson da Silva Azevedo *a/k/a* Ricardo Azevedo Gomes Dos Santos)

347.     Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

348.     At all material times, Defendants were controlled by Azevedo.  Mr. Azevedo is the managing member of Texas Frisco Supply LLC and G&S Pool Services and owner of GSA Pools Services, America Pool Supply, and Zion Pool Supply. Texas Frisco Supply and G&S Pool Services appear to be the parent companies of the Amazon Storefronts and *d/b/a's* which may simply be aliases or alter egos of Azevedo.

349.     Moreover, Azevedo is directing, allowing, selling, encouraging the aliases or alter egos to sell and advertise infringing products that unfairly trade on the Hayward Marks in the United States.

350.     Hayward has warned Azevedo, and thereby GSA Pools, Zion Pool Supply, America Pool Supply, Texas Frisco Supply and G&S Pool Services on several occasions that the products are infringing and are otherwise unlawful.

351.     Despite these warnings, Azevedo and by extension GSA Pools, Zion Pool Supply, America Pool Supply, Texas Frisco Supply and G&S Pool Services, refuse to change their conduct in connection with the Hayward Marks and products. As a result of such notice, Azevedo has actual knowledge of the infringing nature of the Defendants as alleged above.

352. Azevedo contributed to or induced Defendants' infringement by allowing the infringing advertisements and in connection with the sale of the Hayward products. Azevedo through the Defendants have advertised and sold these products without Hayward's authorization.

353. This conduct has caused, and is continuing to cause, irreparable injury to Hayward, including to its reputation and goodwill, and Hayward has no adequate remedy at law. Defendants refuse to stop the unlawful activity. Unless such unauthorized use is enjoined, Hayward will continue to be irreparably harmed.

354. Azevedo conduct as described above, has been willful, wanton, reckless and in total disregard to Hayward's rights.

As a result of Azevedo's misconduct, Hayward has suffered and will continue to suffer, monetary damages and loss of goodwill.

## TENTH CAUSE OF ACTION
### Piercing the Corporate Veil Liability
### (Against Gleidson da Silva Azevedo *a/k/a* Ricardo Azevedo Gomes Dos Santos)

355. Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

356. At all material times, there was no separation between any Defendants and Mr. Azevedo. Defendants were controlled by Azevedo. Mr. Azevedo is the managing member of Texas Frisco Supply LLC and G&S Pool Services and owner of GSA Pools Services, America Pool Supply, and Zion Pool Supply. Texas Frisco Supply and G&S Pool Services appear to be the parent companies of the Amazon Storefronts and *d/b/a's* which may simply be aliases or alter egos of Azevedo.

357.    Moreover, Azevedo is directing, allowing, selling, encouraging the aliases or alter egos to sell and advertise infringing products that unfairly trade on the Hayward Marks in the United States.

358.    Hayward has warned Azevedo, and thereby GSA Pools, Zion Pool Supply, America Pool Supply, Texas Frisco Supply and G&S Pool Services on several occasions that the products are infringing and are otherwise unlawful.

359.    Despite these warnings, Azevedo and by extension GSA Pools, Zion Pool Supply, America Pool Supply, Texas Frisco Supply and G&S Pool Services, refuse to change their conduct in connection with the Hayward Marks and products. As a result of such notice, Azevedo has actual knowledge of the infringing nature of the Defendants as alleged above.

360.    Azevedo contributed to or induced Defendants' infringement by allowing the infringing advertisements and in connection with the sale of the Hayward products.  Azevedo through the Defendants have advertised and sold these products without Hayward's authorization.

361.    As stated in detail above, Azevedo used these companies, Texas Frisco Supply LLC and G&S Pool Services LLC and the storefronts, America Pool Supply, GSA Pool Services, and Zion Pool Supply, to deliberately to infringe Hayward's intellectual property right.

362.    Hayward has suffered an unjust cost. Specifically, this conduct has caused, and is continuing to cause, irreparable injury to Hayward, including to its reputation and goodwill, and Hayward has no adequate remedy at law. Defendants refuse to stop the unlawful activity.  Unless such unauthorized use is enjoined, Hayward will continue to be irreparably harmed.

363.    Azevedo conduct as described above, has been willful, wanton, reckless and in total disregard to Hayward's rights.

As a result of Azevedo's misconduct, Hayward has suffered and will continue to suffer, monetary damages and loss of goodwill.

**ELEVENTH CAUSE OF ACTION**
**Vicarious Liability**
**(Against Gleidson da Silva Azevedo *a/k/a* Ricardo Azevedo Gomes Dos Santos)**

364.    Hayward incorporates the allegations contained in the foregoing paragraphs as if fully set forth herein.

365.    Azevedo has the right and ability to control what products he sells and advertises in connection with the Defendants.  In particular, Azevedo is allowing and encouraging the Defendants Texas Frisco Supply LLC, G&S Pool Services,  GSA Pools Services, America Pool Supply,  and Zion Pool Supply, to advertise and sell unauthorized Hayward products.

366.    At all material times, Defendants were controlled by Azevedo.  Mr. Azevedo is the managing member of Texas Frisco Supply LLC and G&S Pool Services and owner of  GSA Pools Services, America Pool Supply,   and Zion Pool Supply. Texas Frisco Supply and G&S Pool Services appear to be the parent companies of the Amazon Storefronts and *d/b/a's* which may simply be aliases or alter egos of Azevedo.

367.    Moreover, Azevedo is directing, allowing, advertising, selling, encouraging the aliases or alter egos to sell and advertise infringing products that unfairly trade on the Hayward Marks in the United States.

368.    Hayward has warned Azevedo, and thereby GSA Pools, Zion Pool Supply, America Pool Supply, Texas Frisco Supply and G&S Pool Services on several occasions that the products are infringing and are otherwise unlawful.

369.    Despite these warnings, Azevedo and by extension GSA Pools, Zion Pool Supply, America Pool Supply, Texas Frisco Supply and G&S Pool Services, refuse to change their conduct

in connection with the Hayward Marks and products. As a result of such notice, Azevedo has actual knowledge of the infringing nature of the Defendants as alleged above.

370. Azevedo contributed to or induced Defendants' infringement by allowing the infringing advertisements and in connection with the sale of the Hayward products. Azevedo through the Defendants have advertised and sold these products without Hayward's authorization.

371. This conduct has caused, and is continuing to cause, irreparable injury to Hayward, including to its reputation and goodwill, and Hayward has no adequate remedy at law. Defendants refuse to stop the unlawful activity. Unless such unauthorized use is enjoined, Hayward will continue to be irreparably harmed.

372. Azevedo conduct as described above, has been willful, wanton, reckless and in total disregard to Hayward's rights.

As a result of Azevedo's misconduct, Hayward has suffered and will continue to suffer, monetary damages and loss of goodwill.

## PRAYER FOR RELIEF

WHEREFORE, Hayward prays for relief and judgment as follows:

A. Judgment in favor of Hayward and against Defendants in an amount to be determined at trial including, but not limited to, compensatory damages, statutory damages, treble damages, restitution, including disgorgement of profits, punitive damages, and pre-judgment and post-judgment interest, as permitted by law;

B. A finding that all Defendants are jointly and severally liable to Hayward and/or that Defendants are alter egos of Azevedo and vice versa;

C. A finding that Azevedo is contributory liable to Hayward;

D. A finding that Azevedo is vicariously liable to Hayward;

E.      That a preliminary and/or permanent injunction be issued enjoining Defendants and any employees, agents, servants, officers, representatives, directors, attorneys, successors, affiliates, assigns, any and all other entities owned or controlled by Defendants, and all of those in active concert and participation with Defendants (the "Enjoined Parties") as follows:

i)      Prohibiting the Enjoined Parties from advertising or selling, via the internet or otherwise, all Hayward Products;

ii)     Prohibiting the Enjoined Parties from using the Hayward Trademarks in any manner, including advertising on the internet;

iii)    Prohibiting the Enjoined Parties from importing, exporting, manufacturing, producing, distributing, circulating, selling, offering to sell, advertising, promoting, or displaying any and all Hayward Products as well as any products bearing the Hayward Trademarks;

iv)     Prohibiting the Enjoined Parties from disposing of, destroying, altering, moving, removing, concealing, or tampering with any records related to any products sold by them which contain the Hayward Trademarks including: invoices, correspondence with vendors and distributors, bank records, account books, financial statements, purchase contracts, sales receipts, and any other records that would reflect the source of the products that Defendants have sold bearing this trademark;

v)      Requiring the Enjoined Parties to take all action to remove from the Enjoined Parties' websites any reference to any Hayward Products, or the Hayward Trademarks;

vi)     Requiring the Enjoined Parties to take all action, including but not limited to, requesting removal from internet search engines (such as Google, Yahoo!, and Bing), to remove from the internet any uses of the Hayward Trademarks which associate Hayward Products or the Hayward Trademarks with the Enjoined Parties or the Enjoined Parties' website;

vii)    Requiring the Enjoined Parties to take all action to remove unauthorized uses of the Hayward Trademarks from the internet, including from the website www.amazon.com;

F.      An award of attorneys' fees, costs, and expenses;

G.      Enhanced damages, including double or treble damages under the Lanham Act and/or treble damages under Section 75-16 of the UDTPA (N.C. Gen. Stat. § 75-16) ; and

H.      Such other and further relief as the Court deems just, equitable and proper

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Hayward demands a trial by jury on all issues so triable.

Respectfully submitted this the 28th day of February 2025,

HAYWARD INDUSTRIES, INC.

_s/  Russ Ferguson_
Russ Ferguson (N.C. Bar No. 39671)
**Womble Bond Dickinson (US) LLP**
One Wells Fargo Center
Suite 3500
301 South College Street, Suite 3500
Charlotte, NC 28202
Russ.Ferguson@wbd-us.com

Erik Paul Belt*
Alexander L. Ried*
Anne E. Shannon*
**McCARTER & ENGLISH, LLP**
265 Franklin Street
Boston, Massachusetts 02110
Tel: (617) 449-6500
ebelt@mccarter.com
aried@mccarter.com
ashannon@mccarter.com

*_Pro hac vice_ application forthcoming

_Attorneys for Plaintiff Hayward Industries, Inc._